IN THE UNITED STATES COURT OF APPEALS FOR THE
THIRD CIRCUIT

| | | |
|---|---|---|
| CALVIN BRACKBILL | : | |
| Plaintiff - Appellant | : | No. 22-1628 |
| | : | |
| v. | : | |
| | : | |
| STEPHEN RUFF, ET AL. | : | |
| Defendants-Appellees | : | |

BRIEF OF DEFENDANTS- APPELLEES

_____

APPEAL FROM THE JUDGMENT OF
THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

No.   1:17-cv-01046
THE HONORABLE JENNIFER P. WILSON
DISTRICT JUDGE

_____

January 19, 2022

Respectfully submitted,
Lavery Law
Frank J. Lavery, Jr., Esquire
Attorney No. 42370
Andrew W. Norfleet, Esquire
Attorney No. 83894
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (telephone)
(717) 233-7003 (facsimile)
flavery@laverylaw.com
anorfleet@laverylaw.com
Attorneys for Appellees

# Table of Contents

Table of Authorities.................................................................. iii

I.      JURISDICTIONAL STATEMENT...................................................1

II.     COUNTER STATEMENT ADDRESSING STANDARD OF
        REVIEW..................................................................................2

III.    APPELLEES' STATEMENT OF RELATED CASES AND
        PROCEEDINGS.........................................................................4

IV.     APPELLEES' COUNTER STATEMENT OF THE ISSUES
        PRESENTED FOR REVIEW .......................................................5

V.      APPELLEES' PROCEDURAL HISTORY.......................................6

VI.     COUNTER STATEMENT OF THE CASE.....................................11

    A.      COUNTER STATEMENT OF FACTS .......................................11

        (i).    Plaintiff's Drive Home in the Morning of June 28, 2015..........11

        (ii).   Officers Hill and Ruff Observe Plaintiff's Vehicle .................13

        (iii).  Brackbill's Initial Interaction with Officers Ruff and Hill.......14

        (iv).   Brackbill's Arrest.....................................................................18

        (v).    The Traffic Citations Issued to Brackbill.................................20

        (vi).   The Outcome of the Criminal Proceedings Against Brackbill .21

VII.    APPELLEES' SUMMARY OF ARGUMENT .................................22

VIII.   ARGUMENT ...........................................................................29

    1.      The District Court was correct in concluding that, based on the
            totality of the circumstances, Officers Hill and Ruff had
            sufficient probable cause to arrest Brackbill. .............................29

        i.  The evidence of record supports the District Court's conclusion
            that probable cause existed to believe Plaintiff engaged in traffic
            offenses. ..................................................................................33

        ii.  Brackbill argues that the District Court should not accept his
            testimony that he stopped his vehicle in the middle of the road. .37

iii.  Brackbill did not preserve his arguments for review, and the District Court did not make a plain error. ................................. 42

2.  The District Court correctly concluded that Officer Hill had no duty to intervene when sufficient probable cause existed to arrest Brackbill. ............................................................................ 44

3.  The District Court concluded correctly that Officer Ruff's testimony was sufficient to support Brackbill's arrest. .............. 46

4.  The District Court correctly granted summary judgment on Brackbill's state law claims. ....................................................... 53

IX.  CONCLUSION ............................................................................... 56

Combined Certifications ......................................................................... 57

Certificate of Service .............................................................................. 58

# Table of Authorities

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................. 2

*Atwater v. City of Lago Vista*, 532 U.S. 318 (2001) ......................... 33, 34

*B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293
   (3d Cir. 2013) ...................................................................... 3

*Barna v. City of Perth Amboy*, 42 F.3d 809 (3d Cir. 1994) ................... 29

*Black v. Montgomery Cty.*, 835 F.3d 358 (3d Cir. 2016) ........... 46, 47, 52

*Boseman v. Upper Providence Twp.*, 680 F. App'x 65
   (3d Cir. 2017) .......................................................... 46, 47, 48, 52

*Brown v. Makofka*, 644 F. App'x 139 (3d Cir. 2016) ............................ 34

*Bushman v. Halm*, 798 F.2d 651 (3d Cir. 1986) .................................... 2

*Celotex Corp v. Catrett*, 477 U.S. at 324 ............................................. 3

*Commonwealth v. Williams*, 568 A.2d 1281 (Pa. Super. Ct. 1990) ........ 32

*Cooper v. Harris*, 137 S. Ct. 1455 (2017) ............................................. 3

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ........................... 30

*Frantz v. Gress*, 359 F. App'x 301 (3d Cir. 2009) ................................ 30

*Giles v. Kearney*, 571 F.3d 318 (3d Cir. 2009) ..................................... 2

*Halsey v. Pfeiffer*, 750 F.3d 273, 2014 WL 1622769
   (3d. Cir. 2014) ................................................................... 47, 52

*Hildebrand v. Allegheny Cty.*, 757 F.3d 99 (3d Cir. 2014). ..................... 3

*Huff v. Cheltenham Twp.*, No. 14-05555, 2015 U.S. Dist. LEXIS
   85955 (E.D. Pa. July 1, 2015) ................................................... 32

*In re City of Phila. Litig.*, 158 F.3d 723 (3d Cir. 1998) ........................ 54

*Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007) ................................ 29, 30

*Montone v. City of Jersey City*, 709 F.3d 181 (3d Cir. 2013) ................... 2

*Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993) ...................................... 2

*Noviho v. Lancaster Cty. of Pa.,* 683 F. App'x 160 (3d Cir. 2017) .......... 34

*Pettit v. Namie*, 931 A.2d 790 (Pa. Commw. 2007) .............................. 54

*Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994) ............................ 54

*Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006) ..................................... 54

*Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir. 2008) ......... 29, 30

*United States v. Abreu*, 32 F.4th 271 (3d Cir. 2022) ................................. 43

*United States v. Joseph*, 730 F.3d 336 (3d Cir. 2013) ............................. 43

*US v. Myers*, 308 F.3d 251 (3d Cir. 2002) ................................................. 30

*Virginia v. Moore*, 553 U.S. 164 (2008) .................................................... 32

*Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000) ......................................... 30

*Wright v. City of Phila.*, 409 F.3d 595 (3d Cir. 2005) ............................. 31

## Statutes

28 U.S.C. §1291 ............................................................................................. 1

42 U.S.C. §1983 ......................................................................................... 6, 8

42 Pa.C.S.§8501 ............................................................................................ 53

42 Pa.C.S.§8541 ...................................................................................... 53, 54

42 Pa.C.S.§8542 ............................................................................................ 54

42 Pa.C.S.§8550 ............................................................................................ 54

75 Pa.C.S.§3714 ....................................................................................... 8, 31

75 Pa.C.S.§3351 ................................................... 34, 35, 37, 42, 44, 45

## Rules

Fed.  R. Civ. P. 56(a) ............................................................................... 2, 3

# I.    JURISDICTIONAL STATEMENT

Here, the Appellant (hereinafter "Brackbill") appeals from an Order of the District Court entered on March 31, 2022, granting the motion for summary judgment to the Appellees, and denying Plaintiff's motion for summary judgment.  (Appx. Vol. I-3).  Because Brackbill asserted claims under 42 U.S.C. §1983, the District Court had jurisdiction pursuant to 28 U.S.C. §1331.  Because Brackbill appealed an order of final judgment disposing of all claims, this Court has jurisdiction pursuant to 28 U.S.C. §1291.

## II.    COUNTER STATEMENT ADDRESSING STANDARD OF REVIEW

On appeal from a grant of summary judgment, this Court's review is plenary, and it must apply the same standard of decision as the District Court.  See *Bushman v. Halm*, 798 F.2d 651, 656 (3d Cir. 1986); *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013).  This Court applies the same test as the District Court.  *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).  Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.  R. Civ. P. 56(a).  This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is there be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In conducting this analysis, this Court views the facts and draws all reasonable inferences in the non-moving party's favor. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). However, the non-moving party cannot simply rely on unsubstantiated allegations in pleadings but must cite "particular parts of materials in the record." Fed.  R.  Civ.  P.

56(c)(1)(A); see also, *Celotex Corp v. Catrett*, 477 U.S. at 324. This Court "review[s] the District Court's factual findings for clear error, its legal conclusions de novo, and its ultimate decision for abuse of discretion." *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 301–02 (3d Cir. 2013) (en banc). This Court may affirm "on any ground supported by the record." *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014). This Court "review[s] the District Court's factual findings for clear error..." *B.H.*, 725 F.3d at 301–02. This Court's "job is different—and generally easier." *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017). This Court "may not reverse just because we would have decided the matter differently." *Id.* at 1465. "A finding that is plausible in light of the full record—even if another is equally or more so—must govern." *Id.* Indeed, the "very premise of clear error review is that there are often two permissible—because two plausible—views of the evidence." *Id.* at 1468.

## III. APPELLEES' STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously, and the undersigned is not aware of any other cases or proceedings in any way related, completed, pending, or about to be presented before this Court or any other Court or agency, state or federal.

## IV.   APPELLEES' COUNTER STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Was the District Court correct in concluding that, based on the totality of the circumstances, Officers Hill and Ruff had sufficient probable cause to arrest Brackbill?

**Suggested Answer**: Yes.

2.     Was the District Court correct in concluding that Officer Hill had no duty to intervene when sufficient probable cause existed to arrest Brackbill?

**Suggested Answer:  Yes.**

3.     Was the District Court correct in concluding Officer Ruff's testimony was sufficient to support Brackbill's arrest?

**Suggested Answer:  Yes**

4.     Was the District Court correct in concluding that Officer Ruff is immune from Brackbill's state law claims?

**Suggested Answer:  Yes**

## V.    APPELLEES' PROCEDURAL HISTORY

Brackbill initiated this action on June 14, 2017, against the following defendants: Stephen Ruff; Gregory Hill; Ian Dawson; Tyron Meik; Harrisburg Police Department officials; and the City of Harrisburg.  (App. Vol.  I at 28). Brackbill filed an Amended Complaint.  *Id*.  On September 28, 2017, Defendants City of Harrisburg, Dawson, Hill, Meik and Ruff filed a Motion to Dismiss.  *Id*.  On May 22, 2018, the District Court granted the motion in part and denied the motion in part.  *Id*.  On July 3, 2018, the City of Harrisburg, Dawson, Meik, and Ruff filed an Answer to Brackbill's Amended Complaint.  *Id.* at 29.

Defendant Dawson was dismissed from this case on May 22, 2018.  (App. Vol.  I at fn1, p.2).  This resulted in Brackbill's claims for Fourth Amendment violations based on excessive force, Fourth and Fourteenth Amendment violations against the City of Harrisburg under municipal liability theory, and state law tort claims of intentional infliction of emotional distress against Defendants Ruff, Hill, Dawson, and Meik being dismissed without prejudice.  *Id.* Brackbill did not amend his complaint to restate these claims.  *Id.*  Therefore, the only remaining claims before the District Court on Appellees' Motion for Summary Judgement were 42 U.S.C. §1983 violations based on false arrest, failure to intervene, and procedural due process/fabricated

evidence; and state law violations based on malicious prosecution and abuse of process. (Appx. Vol. I at 29).

On August 31, 2021, Magistrate Judge Arbuckle issued a Report and Recommendation on the Motion for Summary Judgment filed by Appellees ("Ruff," "Hill," and "Meik"). (App'x Vol I at 27). Judge Arbuckle recommended that Appellees' motion for summary judgment be granted regarding Brackbill's claims for failure to intervene against Meik; Fourth and Fourteenth Amendment violations based on supervisory liability; and state law battery because Brackbill conceded that these claims should be dismissed. (*Id.* at 29). Judge Arbuckle also recommended that Appellees' Motion for Summary Judgment be denied in all other respects because there are disputes of material fact which preclude the entry of summary judgment. (*Id.* at 77).

On October 5, 2021, Appellees objected to Judge Arbuckle's Report and Recommendation. Brackbill timely filed his response.

On March 31, 2022, the District Court issued an order and memorandum granting Appellees' Motion for Summary Judgement. (App'x Vol I at 5-7, 5-26). The District Court adopted the portions of Judge Arbuckle's Recommendations recommending Appellees' Motion for

Summary Judgment be granted as to Brackbill's claims for violations of
42 U.S.C. § 1983 for failure to intervene against Defendant Meik;
violations of 42 U.S.C. § 1983 based on Fourth and Fourteenth
Amendment supervisory liability; and state law battery. (*Id. at 10-11*).
The District Court noted that Judge Arbuckle found that Brackbill did
not oppose the dismissal of these claims.  In addition, the District Court
noted that Judge Arbuckle found that "Defendant Ruff should be entitled
to immunity on Plaintiff's state law claims to the extent they are based
on the insurance citation [,]" and accordingly recommended that
summary judgment be granted with respect to those state law claims. (*Id.
at 23-26*).

The District Court declined to adopt, in part, the recommendation
denying Appellees Motion for Summary Judgement related to Brackbill's
claim for false arrest. (*Id.* at 12-13).  In doing so, the District Court found
that Judge Arbuckle failed to consider that the officers had probable
cause to charge Brackbill with violations of 75 PA. CONS. STAT. §
3714(a) for careless driving and 75 PA. CONS. STAT. § 3351(a) for
stopping his vehicle in the middle of the road. (*Id.* at 13).  The District
Court also concluded that Appellees raised this argument in their brief

in support of their motion for summary judgement, and Brackbill failed to meaningfully respond, while incorrectly stating that Appellees failed to identify other crimes for which the officers would have had probable cause to arrest Brackbill. *Id.* at 14, fn.4.

The District Court declined to adopt Judge Arbuckle's Recommendation denying Appellees' Motion for Summary Judgement regarding Brackbill's claim for failure to intervene against Officer Hill. (*Id.* at 18). The District Court concluded that sufficient probable cause existed to support a constitutional arrest for a violation of 75 PA. CONS. STAT. § 3351(a), and Brackbill cannot show that there was a reasonable opportunity for Officer Hill to intervene or that he had a duty to intervene in Brackbill's arrest. (*Id.* at 19).

The District Court declined to adopt Judge Arbuckle's Recommendation denying Appellees' Motion for Summary Judgement regarding Brackbill's claims for due process violations based on fabricated evidence. (*Id.*). The District Court concluded that Judge Arbuckle committed clear error by unduly crediting the arguments of Plaintiff's counsel in considering the merits of Brackbill's fabricated evidence claim.

Finally, the District Court declined to adopt Judge Arbuckle's Recommendation denying Appellees' Motion for Summary Judgment regarding Brackbill's state law claims for malicious prosecution and abuse of process. (*Id.* at 23). The District Court found that because no party objected to Judge Arbuckle's conclusion that Officer Ruff is entitled to immunity on Brackbill's state law claims based on the citation for lack of insurance, the remaining ground for Brackbill's state law claims is the citation for an equipment violation based on Brackbill's detached bumper/bumper cover. (*Id.*). The District Court found no evidence to support Brackbill's speculative claim that Officer Ruff acted with willful misconduct. (*Id.* at 25).

## VI.  COUNTER STATEMENT OF THE CASE

### A.    COUNTER STATEMENT OF FACTS

### (i).    Plaintiff's Drive Home in the Morning of June 28, 2015

On June 27, 2015, the Appellant, Calvin Brackbill ("Brackbill")
started his work shift at the Hotel Hershey in the late afternoon. (Appx.
Vol. II at 146). Brackbill's shift ended during the early hours of June 28,
2015. (*Id.*). Brackbill recalls that it was raining when his shift ended.
(*Id.* at 148). After his shift, Brackbill drove from Hershey, Pennsylvania
to downtown Harrisburg, Pennsylvania, to return to his apartment. (*Id.*).
At approximately 3:00 AM, Brackbill was operating his vehicle in the 300
block of Chestnut Street in Harrisburg, Pennsylvania. (*Id.* at 236). While
on Chestnut Street, he stopped at a traffic light, near the restaurant,
Bricco, where he rolled down his window. (*Id.* at 150). Brackbill agrees
that he stopped at Third Street and Chestnut Street intersection in
Harrisburg, Pennsylvania. (*Id.* at 149).[1]  Brackbill cannot recall if he was

---

[1] Q.—Okay. And do you – what intersection was this?
A.—It was near Bricco and Pennsylvania Place.
Q.—Okay. So Pennsylvania Place, as in the apartment building off of Chestnut
Street?
A.—Yes.
Q.—And then Bricco, as in the restaurant on the corner of 3rd and Chestnut Street?
A.—Yes.

11

listening to music at the time, but he generally listens to Country music at a loud volume when driving.  (*Id.*).

As Brackbill drove through the intersection, he heard a scraping noise that he described as "medium" in volume.  (*Id.*).  When he heard the noise, Brackbill stopped his vehicle in the middle of the road to inspect what was going on with his car. (*Id.* at 150).  While inspecting his vehicle, he observed the front bumper and/or bumper cover had become detached and was sagging to the point where the bumper/ bumper cover was making contact with the roadway.  (*Id.*).[2]

---

[2] Q.—Okay. So you stopped in the middle of the road and got out of your car, and what did you see at that point?
A.—Regarding my car?
Q.—Yeah. I mean, after you got out of your car, what did you do?
A.—I walked up and I noticed the bumper was sagging in the middle.
Q.—Okay. And when you say sagging, was it somewhat detached from the car? Was it hanging off of it? If want to explain it more, go ahead.
A.—The two clips appeared to have came loose, and it was just kind of sagging on the roadway.
Q.—Okay. Was it touching the road?
A.—Yes.
Q.—Okay. Was the metal part touching the road?
A.—Yes.
Q.—Were the outer edges on the left or right side, were they touching the road?
A.—No.
Q.—Okay. and when you said, like, the tabs had come undone, can you explain to me what that means?
A.—Sure. The tabs on the corners of the bumpers that secure it to the fender –
Q.—Um-hum.
A.— -- they had come unclipped.

Brackbill determined that the sagging bumper and/or bumper cover caused the scraping sound he heard. (*Id.*).[3]  Brackbill did not know when the vehicle's bumper and/or bumper cover began to sag or when it began contacting the roadway and making the scraping sound. (*Id.*).[4]

### (ii).   Officers Hill and Ruff Observe Plaintiff's Vehicle

In the early morning of June 28, 2015, Harrisburg Police Officers Ruff and Hill were on duty. (*Id.* at 236).  At around 3:00 AM, Officer Hill and Officer Ruff were in the vicinity of the 300 block of Chestnut Street in downtown Harrisburg. (*Id.* at 237). Officer Hill was standing in the 300 block of Chestnut Street area,[5] and Officer Ruff was parked at the intersection of Chestnut Street and Dewberry Street. (*Id.* at 236-237). Officers Hill and Ruff heard a loud scraping sound coming from Chestnut Street.  (*Id.* at 237). Officer Hill observed the sound coming from a silver

---

[3] Q.—All right. And so after you saw that, you know, the bumper had been sagging, you said in the middle, do you – did you have any idea how long it had been like this?
A.—No.
Q.—Okay. And so was it your understanding that that was the cause of the sound that you heard, the scraping sound?
A.--Yes.

[4] See fn. 3.
[5] This Court can take judicial notice that Pennsylvania Place is located at 301 Chestnut Street, Harrisburg, PA 17101.

BMW sedan that he later learned was operated by Brackbill. (*Id.*). Officer Hill determined that the scraping sound was coming from Brackbill's front bumper, which was partially detached and scraping the roadway. (*Id.*). Officer Ruff also determined that the sound was coming from Brackbill's vehicle. (*Id.* at 210). Officer Ruff believed Brackbill's bumper and/or bumper cover dragging on the roadway created an unsafe situation. (*Id.* at 227). Officer Ruff also thought it was odd that Brackbill drove his vehicle for more than a city block, while the vehicle's bumper and/or bumper cover scaped the roadway, before stopping his vehicle. (*Id.*).

### (iii). Brackbill's Initial Interaction with Officers Ruff and Hill

Officers Ruff and Hill initially interacted with Brackbill at approximately 3:00 AM, on a weekend night, approximately one block away from the City of Harrisburg's downtown bar district. (*Id.* at 231). The area was known to be frequented by people drinking in nearby bars. (*Id.* at 231-232).

When Officer Hill observed the scraping sound coming from the dragging front bumper/ bumper cover of Brackbill's vehicle, he approached Brackbill's vehicle on Chestnut Street. (*Id.* at 237). Brackbill

maintains that he was adjusting his bumper/ bumper cover when Officer Hill, on foot, approached his vehicle. (*Id.* at 151). Officer Hill approached Brackbill to determine if he (Brackbill) had been involved in a motor vehicle accident. (*Id.* at 237). Officer Hill asked Brackbill if he struck anything with his vehicle. (*Id.* at 151). Because of the condition of Brackbill's vehicle, Officer Hill thought the vehicle might have been involved in a motor vehicle accident. (*Id.* at 237). Brackbill told Officer Hill, "I don't know what I hit. I didn't hit anything." (*Id.* at 151). Brackbill became angry with Officer Hill for inquiring about the possibility that his vehicle was involved in an accident. (*Id.* at 237).

When Officer Hill contacted Brackbill, he smelled an odor of alcohol coming from Brackbill's person. (*Id.* at 236). Officer Hill asked Brackbill if he had been drinking alcohol. (*Id.* at 152). Brackbill denied drinking that night. (*Id.*). Brackbill became more upset when Officer Hill asked him if he had been drinking. (*Id.* at 238). Brackbill was argumentative and was not cooperative when answering questions. (*Id.*).

When Officer Ruff heard the scraping sound, he parked his service vehicle, with the vehicle's emergency lights activated, behind Brackbill's vehicle. Brackbill was outside of his vehicle inspecting his bumper and/or

bumper cover, and other police officers were present. Officer Ruff approached Brackbill to ask about the vehicle. When Officer Ruff began asking questions, Brackbill was immediately confrontative and confrontational. (*Id.* at 212).

During Brackbill's interactions with Officers Ruff and Hill, he chest bumped Officer Hill and was close to his face. (*Id.* at 212, 225). Although, Brackbill denies chest-bumping Officer Hill, he admitted that he was frustrated during his interactions with Officers Hill and Ruff, and he admits that he raised his voice in a way that could have been construed as "yelling." (*Id.* at 159). During the interaction, Brackbill was repeating the same information to the officers. At the same time, Officer Ruff believed Brackbill was not providing complete answers to their questions. (*Id.* at 232[6]).

---

[6] Q. –Was he answering questions that you were asking him?
A.—Not that I recall.
Q.—What do you mean by that?
A.—I mean I don't remember specifically what questions I asked him; but I mean just basic questions: Where are you coming from, like what happened to your car, why – why is this down, I don't remember him answering those.
Q.—But he was speaking? He wasn't – he was speaking to you during the exchange?
A.—I believe so, yeah.
Q. –Yeah. And you described his conduct I believe in your report as uncooperative, correct?
A.—Yes.
Q.—And what did you mean by that?

During the exchange between Brackbill and Officers Hill and Ruff, Officer Ruff said that he smelled alcohol on him. (*Id.* at 210). Based on the totality of the information available to Officers Hill and Ruff, they believed Brackbill was intoxicated and had operated his vehicle while intoxicated. (*Id.* at 225). Because it rained and because Brackbill was agitated and uncooperative during their encounter, Officers Hill and Ruff did not subject Brackbill to field sobriety testing. (*Id.* at 222). Officers Hill and Ruff did not have a portable breathalyzer to test Brackbill for alcohol. (*Id.* at 213). After his interaction with Officers Hill and Ruff, Brackbill asked to speak to a sergeant. Officers Hill and Ruff directed Brackbill to a nearby police vehicle. (*Id.* at 154). Brackbill approached the police vehicle and spoke with Defendant Meik. (*Id.*). Brackbill told Sergeant Meik that Officers Hill and Ruff "were harassing him for

---

A.—Well, he just wouldn't give us any information to allow us to make an informed decision.
Q.—Okay. And so during your exchange with Mr. Brackbill you didn't ask him for his insurance card, correct?
A.—No.
Q.—Did you feel Mr. Brackbill was in a state where he could have answered a questions concerning the state of his insurance?.
A.—No.
Q.—And why is that?
A.—I think he was – he was just too animated or agitated about the – presence to answer that.

17

drinking." (*Id.*).    Meik told Plaintiff that, "It looks like you have been drinking." (*Id.*).[7]  Brackbill maintains that nothing else was said between him and Meik. (*Id.*).  Meik recalled Brackbill acting irate, loud, aggressive and that he was uncooperative.  (See Def. Meik dep.  (ex. 9 at pgs.  52-54, 56-57)).  Defendant Meik spoke to Officers Ruff and Hill, who explained why they believed they needed to arrest Brackbill for suspicion of DUI. (See *Id.* at pgs.  52-53).

Defendant Meik agreed that, based on Brackbill's demeanor, the condition of Brackbill's vehicle (the bumper/bumper cover dragging), because they detected an odor of alcohol on Brackbill, and because the weather and Brackbill's demeanor did not allow for the administering of field sobriety tests, there was sufficient evidence to arrest Brackbill for suspicion of DUI.  (See *Id.* at pgs.  52-53, 61, 70, 78-79).

### (iv).  Brackbill's Arrest

Following his interaction with Officers Hill and Ruff, Brackbill was placed in handcuffs and was advised that he was under arrest for suspicion of DUI.  (Appx. Vol. II at 156).  Brackbill began to laugh when he was placed in handcuffs.  (*Id.* at 155).  Brackbill began questioning the

---

[7] Defendant Meik denies that this exchange occurred. Def. Meik dep. (ex. 9 at pgs. 75-76.)

officers why he was being arrested.  Officers Hill and Ruff explained that he was arrested for operating his motor vehicle while drinking/ DUI, although Brackbill claimed he had not been drinking. (*Id.* at 156).  After Brackbill was arrested, Officer Ruff searched Brackbill's vehicle while he (Brackbill) stood nearby with Officer Hill. (*Id.*).

Brackbill maintains that at the time of the incident, he had a valid insurance card in his vehicle.  (*Id.* at 186).  Brackbill could not recall if Officer Ruff searched the glove compartment in his vehicle.  (*Id.* at 156).  Officer Ruff stated that when he searched Brackbill's vehicle, he located only an expired insurance card.  (*Id.* at 213).

Officer Ruff explained that, during the search of Brackbill's vehicle, he was not asked about his motor vehicle insurance because he believed Brackbill was not in a state to answer questions about his insurance.  (*Id.* at 120).

Once the officers searched Brackbill's vehicle, Brackbill was taken to the police transport van operated by Officer Dawson.  Officer Dawson recalled Brackbill was irritated and mad.  (Supp. Appx. at 279, p.19).  Officer Dawson recalled that Plaintiff  "got up in his face" and he had to turn Brackbill's body and hold him against the van to direct Brackbill

away from him. (*Id.* at pp. 21-23.)   Officer Dawson searched Plaintiff's

person and put him into the transport van.   From there, Brackbill was

transported to the County booking center. (Appx. Vol. II at 158); see also

Ian Dawson dep. (Supp. Appx. at 279-281, pp. 20, 24-25, 27).

Once Brackbill arrived at the booking center, his blood was

drawn for a chemical blood test. (Appx. Vol. II at 166).   Brackbill was

placed in a holding cell for approximately four and a half (4 ½ hours), and

he was released. (*Id.* at 169).

### (v).  The Traffic Citations Issued to Brackbill

On July 19, 2015, the toxicology report for Brackbill's blood

draw found that his blood alcohol content was 0.00 during the June 28,

2015, incident. (Appx. Vol. I at 39).   On or about July 26, 2015, Officer

Ruff issued two traffic citations to Brackbill– (1) for a violation of 67 Pa.

Code 175.78(e)(1) for bumper strength and mounting and (2) for not

maintaining proof of insurance. (Appx. Vol. II at 185).   Because Officer

Ruff was waiting for the results of the chemical blood test, he did not

immediately issue the traffic citations as the traffic citations would be

included on the criminal complaint if Brackbill was charged with a DUI.

(*Id.* at 213).

### (vi).   The Outcome of the Criminal Proceedings Against Brackbill

On November 5, 2015, a summary trial for the two traffic citations was held before Magisterial District Judge Joann Teyral. (Appx. Vol. I at 40). During the summary trial, Brackbill struggled to control his facial expressions and his conduct because he was "fired up." (Appx. Vol. II at 190). Brackbill had to be asked to control himself on multiple occasions. (*Id.*). After the Commonwealth rested its case-in-chief, the Court dismissed the citation related to the lack of motor vehicle insurance. (Appx. Vol. I at 40). Brackbill was found guilty of the traffic citation issued for not having his bumper properly affixed to his vehicle. (*Id.*). Following the hearing, Brackbill requested a summary appeal hearing before the Court of Common Pleas of Dauphin County. (Appx. Vol. II at 190). On March 22, 2016, a Summary Appeal Hearing was held before the Honorable Judge William T. Tully of the Court of Common Pleas of Dauphin County). (Appx. Vol. I at 40). There was confusion about the time of the hearing and the Commonwealth was not prepared to present its case-in-chief. (*Id.*). Judge Tully found Brackbill not guilty of the remaining citation related to the bumper on Brackbill's because Judge Tully found that it would "probably be a *de minimis* infraction." (*Id.*).

21

## VII. APPELLEES' SUMMARY OF ARGUMENT

On June 27, 2015, Brackbill was driving home during the early hours of June 28, 2015. It was raining as he drove, so he kept his windows closed. At approximately 3:00 AM, Brackbill was operating his vehicle in the 300 block of Chestnut Street in Harrisburg. His vehicle was stopped at the Third Street and Chestnut Street intersection. Brackbill could not recall if he was listening to music at the time but acknowledged that he generally listens to Country music at a loud volume when driving.

Because the rain stopped, Brackbill put his window down. As he drove through the intersection, he heard a scraping noise that he described as "medium" in volume. Upon hearing the noise, Brackbill stopped his vehicle in the middle of the road to inspect what was going on with his car. Brackbill has never testified that a police officer ordered him to stop his vehicle on the road. To the contrary, he testified during a summary hearing and again five years later during his deposition that he exited his vehicle to see what was causing the noise. After exiting his vehicle, While inspecting his vehicle, Brackbill observed the front

22

bumper and/or bumper cover was detached and was sagging to the point where the bumper/ bumper cover was making contact with the roadway. Brackbill determined that the sagging bumper and/or bumper cover caused the scraping sound he heard. He did not know when the bumper and/or bumper cover began contacting the roadway and making the scraping sound.

Harrisburg Police Officers Ruff and Hill were on duty early on June 28, 2015. Around 3:00 AM, Officer Hill and Officer Ruff were in the vicinity of the 300 block of Chestnut Street. Both Officer Hill and Officer Ruff heard a loud scraping sound coming from Chestnut Street. Officer Hill observed the sound coming from a silver BMW. He learned later that Brackbill was driving the BMW. Officer Hill determined that the sound was coming from Brackbill's front bumper scraping the roadway. Officer Ruff also determined that the sound was coming from Brackbill's vehicle.

Officers Ruff and Hill contacted Brackbill at around 3:00 AM, approximately one block from the City of Harrisburg's downtown bar district. Officer Hill approached Brackbill's vehicle on Chestnut Street. Brackbill maintains that he was adjusting his bumper/ bumper cover

when Officer Hill approached his vehicle. Officer Hill asked Brackbill if he had struck anything with his vehicle because he thought the vehicle might have been involved in a motor vehicle accident. Brackbill became angry with Officer Hill for inquiring about the possibility that his vehicle was involved in an accident. During their interaction, Officer Hill smelled an odor of alcohol from Brackbill's person. Officer Hill asked Brackbill if he had been drinking alcohol, and Brackbill denied drinking that night. Brackbill became more upset when Officer Hill asked if he had been drinking. He became argumentative and was not cooperative when answering questions.

Officer Ruff parked his service vehicle, with the vehicle's emergency lights activated, behind Brackbill's vehicle. Brackbill was outside his vehicle inspecting his bumper and/or cover. Officer Ruff asked Brackbill about the condition of his vehicle. Brackbill was immediately confrontative and confrontational. Brackbill remained agitated, and he chest-bumped Officer Hill. Brackbill admitted that he was frustrated and that he raised his voice in a way that could have been construed as yelling.

24

Based on the totality of the information available to Officers Hill and Ruff, they believed Brackbill had operated his vehicle while intoxicated. Because of weather conditions and Brackbill's behavior, Officers Hill and Ruff did not conduct field sobriety testing. Brackbill asked to speak to a sergeant. Brackbill approached a nearby police vehicle and spoke with Defendant Meik. Brackbill told Meik that Officers Hill and Ruff "were harassing him for drinking." Meik told Brackbill that he appeared to have been drinking. Meik recalled Brackbill acting irate, loud, aggressive, and uncooperative.

Following his interaction with Officers Hill and Ruff, Brackbill was placed in handcuffs and was advised that he was under arrest for suspicion of DUI. Officer Ruff stated that when he inventoried Brackbill's vehicle, he located only an expired insurance card. Brackbill was transported to the booking center, where his blood was drawn for a chemical blood test.

On July 19, 2015, the toxicology report for Brackbill's blood found his blood alcohol content was 0.00 during the June 28, 2015, incident. Once the toxicology report was returned, Officer Ruff issued two traffic citations to Brackbill– (1) for a violation of 67 Pa. Code

175.78(e)(1) for bumper strength and mounting and (2) for not
maintaining proof of insurance.  Officer Ruff did not immediately issue
the traffic citations as the citations would be included on the criminal
complaint if Brackbill was charged with a DUI.

On November 5, 2015, a summary trial for the two traffic citations
was held before Magisterial District Judge Joann Teyral.  The Court
dismissed the citation related to the lack of motor vehicle insurance and
found Brackbill guilty of the citation issued for not having his bumper
affixed adequately to his vehicle.  Brackbill requested a summary appeal
hearing before the Court of Common Pleas of Dauphin County.  On
March 22, 2016, a Summary Appeal Hearing was held before the
Honorable Judge William T. Tully of the Court of Common Pleas of
Dauphin County).  There was confusion about the time of the hearing,
and the Commonwealth was not prepared to present its case-in-chief.
Judge Tully found Brackbill not guilty of the citation related to the
bumper on Brackbill's vehicle, concluding it would "probably be a *de
minimis* infraction."

Based on the information available to Officers Hill and Ruff, they
had reasonable suspicion to believe that Brackbill was operating his

vehicle while incapable while under the influence and capable of safe driving.  While Brackbill now maintains that he did nothing wrong and simply stopped his vehicle at Officer Hill's request, he has consistently testified that after hearing the scraping noise, he stopped his vehicle in the road to determine what was scraping the ground.  While under oath at the summary hearing and under oath for his deposition, Brackbill has never testified that a police officer ordered him to stop his vehicle.  To the contrary, he testified that his vehicle caught the attention of the police, and he was out of his vehicle and inspecting the damage when Officer Hill approached him.  To believe anything less is to ask the Court to believe Brackbill, while under direct examination from counsel of his choice, lied during the summary hearing.

Brackbill also asks this Court to believe that, when Brackbill's toxicology report was completed, Officers Hill and Ruff crafted a "plan" to issue the citations to cover their "bad arrest."  Brackbill misunderstands how probable cause is established.  Officer Ruff had sufficient probable cause to charge Brackbill with various traffic violations.  Brackbill's testimony confirmed he was driving his vehicle while his bumper/bumper cover was scraping the ground.  Brackbill also

admitted that he stopped his vehicle in the road, disproving this conspiracy theory. Brackbill testified to his violations before a magisterial district judge who found him guilty of a summary offense.

Finally, Plaintiff makes multiple references to Officers Hill and Ruff, acknowledging that Brackbill's blood alcohol content did not support their suspicion of DUI. Brackbill is not as eager to acknowledge that both Officer Hill and Officer Ruff testified that, based on the information available to them at the time, the arrest was a good arrest.

The District Court found that Officer Ruff had sufficient probable cause to believe Brackbill committed a summary violation and found his arrest was not unconstitutional. Brackbill's conspiracy theories did not persuade the District Court. The District Court's granting of summary judgment in favor of the Appellees' was well-reasoned and should be affirmed.

VIII. **ARGUMENT**

1.   **The District Court was correct in concluding that, based on the totality of the circumstances, Officers Hill and Ruff had sufficient probable cause to arrest Brackbill.**

The District Court did not improperly resolve a factual dispute in granting summary judgment in favor of the Appellees based on a finding of probable cause for the traffic citations issued to Brackbill. (Appx. Vol. I at 13-15). Therefore, the District Court correctly granted summary judgment in favor of Officers Hill and Ruff to Brackbill's Section 1983 false arrest claim where probable cause existed to support the arrest.

Brackbill correctly states that the District Court's proper inquiry in a Section 1983 claim for false arrest is whether the arresting officers had probable cause to believe the person arrested committed the offense. (Appellant's Br. at p.31). Further, a defendant will not be liable for a Section 1983 claim for false arrest if "[p]robable cause .... exist[ed] as to any offense that could be charged under the circumstances." *Johnson v. Knorr*, 477 F.3d 75, 84–85 (3d Cir. 2007) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994))(emphasis added); *see also Startzell v. City of Philadelphia*, 533 F.3d 183, 204 (3d Cir. 2008). "[T]he establishment of probable cause as to any one charge is sufficient to

defeat [Plaintiff's] Fourth Amendment claims." *Startzell*, 533 F.3d, at n. 14 (citing *Johnson*, 477 F.3d at 82 n. 9, 84-85). Further, "an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense(s) cited at the time of the arrest or booking." *District of Columbia v. Wesby,* 138 S. Ct. 577, 584 n.2 (2018) (emphasis added), *see also Frantz v. Gress*, 359 F. App'x 301, 303 n.6 (3d Cir. 2009) (internal citation omitted).

Brackbill also correctly states that the District Court is permitted to conclude that probable cause existed as a matter of law if the evidence, viewed most favorably to the plaintiff, reasonably would not support a contrary factual finding. (Appellant's Br. at 32). The standard for finding that probable cause existed is a low bar. "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *US v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "A police officer may be liable for civil damages for an arrest if no reasonably competent officer would conclude that probable cause exists." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). A finding of probable cause does

not require the same type of specific evidence of each element of the offense needed to support a conviction because the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction.'" *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005)(emphasis added).

Here, the District Court correctly determined that the Appellees did not limit their argument to the officers finding sufficient probable cause to arrest Brackbill for DUI. Instead, the District Court discussed another objection regarding Brackbill's false arrest claim: that Judge Arbuckle failed to consider that Officers Hill and Ruff had probable cause to charge Brackbill with violations of 75 PA. CONS. STAT. § 3714(a) for careless driving and 75 PA. CONS. STAT. § 3351(a) for stopping his vehicle in the middle of the roadway. (Appx. Vol. I at 17-18). The District Court was correct. Because the Appellees had probable cause to arrest Brackbill for these offenses, his false arrest claims failed in its entirety. (*Id.*) The District Court determined that Judge Arbuckle did not consider Appellees' argument, despite explaining an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of an arrest or booking. (*Id.* at 14.) The District Court also

correctly stated that a § 1983 claim for false arrest turns on whether the officer had probable cause to arrest for any offense, regardless of whether the offense at issue is considered an arrestable offense under state law. *Id.* (citing *Virginia v. Moore*, 553 U.S. 164, 174 (2008) (holding that an officer with probable cause was constitutionally permitted to arrest an individual for a summary offense not otherwise arrestable under state law); (see also, *Huff v. Cheltenham Twp.*, No. 14-05555, 2015 U.S. Dist. LEXIS 85955, at *31 (E.D. Pa. July 1, 2015) (holding that "the presence of probable cause is sufficient to defeat a false arrest or false imprisonment claim under Section 1983, even where the arrest was made without a warrant for a misdemeanor or summary offense" and that "[a]ll that is required by the Fourth Amendment is . . . probable cause to arrest . . . for any offense that could have been charged under the circumstances"); (and, see also, *Commonwealth v. Williams*, 568 A.2d 1281, 1286 (Pa. Super. Ct. 1990) ("Any suggestion that the Pennsylvania or United States Constitutions prohibit custodial arrests for misdemeanors or summary offenses as *unreasonable per se* is wholly unsupported by case law.").

Applying this analysis, the District Court concluded that Officers Hill and Ruff had probable cause to arrest Brackbill for violating 75 PA. CONS. STAT. § 3351(a) for stopping his vehicle in the middle of the roadway.

The District Court correctly stated that Brackbill stopped his vehicle in the middle of the road. (Appx. Vol. I at 17). The District Court also concluded that it was not obvious that Brackbill could not navigate his vehicle to the side of the road, rather than stopping "in the middle of the road" to perform his repairs. Finally, the District Court also found that the record supported a finding that Brackbill was stopped outside a business or residence district, and Brackbill's admission that his vehicle was stopped in the middle of the road undermined the notion that his vehicle left an unobstructed width of the highway . . . for the free passage of other vehicles" as required by the statute. 75 PA. CONS. STAT. § 3351(a). (Appx. Vol. I -17).

      i.   <u>The evidence of record supports the District Court's conclusion that probable cause existed to believe Plaintiff engaged in traffic offenses.</u>

Sufficient probable cause existed to believe Brackbill committed traffic offenses. In *Atwater v. City of Lago Vista*, 532 U.S. 318, 354

(2001), the Supreme Court stated that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Brown v. Makofka*, 644 F. App'x 139, 143 (3d Cir. 2016) (quoting *Atwater*, 532 U.S. 318, 354 (2001)). Accordingly, probable cause for a traffic violation is enough to defeat a Section 1983 false arrest claim. *Id*; (see also, *Noviho v. Lancaster Cty. of Pa.,* 683 F. App'x 160, 164 (3d Cir. 2017) (false arrest claim fails when there was probable cause to believe plaintiff engaged in summary traffic offenses).

The record demonstrates there was probable cause to believe Plaintiff violated 75 Pa.C.S. § 3351 when he stopped in the middle of the road. In pertinent part, 75 Pa.C.S. § 3351 provides:

> (a) General rule. — Outside a business or residence district, no person shall stop, park or stand any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park or stand the vehicle off the roadway. In the event it is necessary to stop, park or stand the vehicle on the roadway or any part of the roadway, an unobstructed width of the highway opposite the vehicle shall be left for the free passage of other vehicles and the vehicle shall be visible from a distance of 500 feet in each direction upon the highway.

34

> (b) Exception for disabled vehicles. — This section and
> sections 3353 (relating to prohibitions in specified places)
> and 3354 (relating to additional parking regulations) do not
> apply to the driver of any vehicle which is disabled in such a
> manner and to such an extent that it is impossible to avoid
> stopping and temporarily leaving the vehicle in that
> position.

See 75 Pa.C.S. § 3351(a)-(b).   Brackbill stopped his vehicle in the middle

of the roadway after driving through the intersection of Third Street and

Chestnut Street, near a business and a residential district.  (Appx. Vol.

II at 149) [8].   Therefore, the officers had sufficient probable cause to

believe that Brackbill committed a traffic violation when he stopped his

vehicle in the middle of the road.   Because sufficient probable cause

existed, the District Court did not err in finding Officers Hill, and Ruff

could have concluded that there was a "fair probability" that Brackbill

violated 75 PA.  CONS.  STAT. § 3351(a) by stopping his vehicle in the

---

[8] Q.—Okay. And do you ⸱⸱what intersection was this?
A.—It was near Bricco and Pennsylvania Place.
Q.—Okay. So Pennsylvania Place, as in the apartment building off of
Chestnut Street?
A.—Yes.
Q.—And then Bricco, as in the restaurant on the corner of 3rd and
Chestnut Street?
A.—Yes.

middle of the roadway outside a business or residence district. (Appx. Vol I at 17-18).

The District Court also correctly determined that Brackbill failed to address this argument in his Brief in Opposition to Appellees' Motion for Summary Judgment and failed to raise any argument in response to Appellees' objections before the Court. (Appx. Vol. I at 18; see also, Appx. Vol I at 18, fn. 5).

There is no dispute that Brackbill drove his vehicle on a roadway while his bumper and/or bumper cover sagged and scrapped the street. (Appx. Vol. 2 at 150)[9]. This, alone, defeats Brackbill's false arrest claim

---

[9] [...]
Q.—Okay. So you stopped in the middle of the road and got out of your car, and what did you see at that point?
A.—Regarding my car?
Q.—Yeah. I mean, after you got out of your car, what did you do?
A.—I walked up and I noticed the bumper was sagging in the middle.
Q.—Okay. And when you say sagging, was it somewhat detached from the car? Was it hanging off of it? If want to explain it more, go ahead.
A.—The two clips appeared to have came loose, and it was just kind of sagging on the roadway.
Q.—Okay. Was it touching the road?
A.—Yes.
Q.—Okay. Was the metal part touching the road?
A.—Yes.
Q.—Were the outer edges on the left or right side, were they touching the road?
A.—No.
Q.—Okay. and when you said, like, the tabs had come undone, can you explain to me what that means?
A.—Sure. The tabs on the corners of the bumpers that secure it to the fender –
Q.—Um-hum.

and supports the District Court's conclusion.  Brackbill was originally found guilty of a traffic offense at the summary trial before the Magisterial District Judge on the charges related to the bumper on his vehicle.  (Appx. Vol. II at 139).  There is no dispute that probable cause existed to believe that Brackbill violated this Pennsylvania Code.

Sufficient probable cause also existed to believe Brackbill engaged in several traffic violations, including a violation of 75 Pa.C.S. § 3351(a)-(b).  Therefore, the well-reasoned opinion of the District Court should not be disturbed.

> ii.  <u>Brackbill argues that the District Court should not accept his testimony that he stopped his vehicle in the middle of the road.</u>

Brackbill argues that the District Court erred in not finding that a clear factual dispute exists because Officer Hill testified, some five years after the incident, that he told Brackbill to stop his vehicle.  To get here,

---

A.— -- they had come unclipped.
[…]
Q.—All right. And so after you saw that, you know, the bumper had been sagging, you said in the middle, do you – did you have any idea how long it had been like this?
A.—No.
Q.—Okay. And so was it your understanding that that was the cause of the sound that you heard, the scraping sound?
A.--Yes.

Brackbill asks this Court to disregard his consistent testimony that he stopped his vehicle in the road, before Officers Hill or Ruff arrived, after he heard the noise from his bumper/bumper cover scraping the road. (Appellant's Br. at 33).

First, on November 5, 2015, less than five months after the incident, Brackbill testified at a hearing on the summary offenses.[10] Under direct examination from his attorney, Brackbill testified that his vehicle was located on the 300 block of Chestnut Street and stopped at a red light. (Appx. Vol. II at 130). The following exchange is found in the hearing transcript:

> Q.    Okay.  And then what happened as you came through the red light?
> A.    As I came through the red light, I had my window rolled down. It stopped raining, so I decided to - - I heard a dragging noise.  I decided to get out of my car and check what it was.
> Q.    And - - I'm sorry.  Go ahead.  I cut you off.
> A.    No, you didn't.  I decided to get out of my car and check what the dragging noise was.
> Q:    And when you got out and you were looking at your vehicle, what did you find?
> A:    I found my bumper was off.

(Appx. Vol. II at 130).  The following exchange also took place:

---

[10] The hearing transcript incorrectly identifies the hearing as a "preliminary hearing."  (Appx. Vol II at 111).

> Q:    All right.  And can you explain that to me?  Is it a fiberglass piece?
>
> A:    It's a plastic piece.  It also housed the fog lights and the grill as well, and it was just dragging on the ground.[11]

Brackbill went on to describe an accident he was involved in earlier in the year with the same vehicle – when he "hit a curb" and "[he] ripped the bumper off."  (Appx. Vol. II at 131).  When his attorney asked if he was aware of the problem with his vehicle on the night in question, Brackbill answered:  "Absolutely not.  I just stopped immediately."  *Id.* at 131-132.  Brackbill also confirmed for his attorney that as soon as he heard the noise, he got out of his vehicle "right away."  *Id.* at 133-134.  Ending any speculation as to the sequence of events, Brackbill testified:

> Q:    And when did the officers contact you?
>
> A:    When did they come up to me?
>
> Q:    Yes.
>
> A:    Once I was out of my car, obviously I attracted the officer's attention **being in the middle of the road**.  That's when the first officer, who was Officer Gregory Hill, he came up to me.  And the second one was Stephen Ruff followed shortly after.

*Id.* at 134.  (Emphasis added).

---

[11] Throughout this litigation, there have been varying descriptions of what was "dragging on the ground" – the vehicle's bumper or the "bumper cover."  Brackbill's testimony should make it clear that this was not simply a "piece of plastic" – the "bumper cover" housed the vehicle's fog lights and the vehicle's grill.

Second, during Brackbill's deposition, he confirmed that he

**stopped his vehicle in the roadway before Officers Hill and Ruff arrived**:

> Q.—Okay.  So you stopped in the middle of the road and got out of your car, and what did you see at that point?
> A.—Regarding my car?
> Q.—Yeah.  I mean, after you got out of your car, what did you do?
> A.—I walked up and I noticed the bumper was sagging in the middle.
> Q.—Okay.  And when you say sagging, was it somewhat detached from the car?  Was it hanging off of it?  If want to explain it more, go ahead.
> A.—The two clips appeared to have came loose, and it was just kind of sagging on the roadway.
> Q.—Okay.  Was it touching the road?
> A.—Yes.
> Q.—Okay.  Was the metal part touching the road?
> A.—Yes.
> Q.—Were the outer edges on the left or right side, were they touching the road?
> A.—No.
> Q.—Okay.  and when you said, like, the tabs had come undone, can you explain to me what that means?
> A.—Sure.  The tabs on the corners of the bumpers that secure it to the fender –
> Q.—Um-hum.
> A.— -- they had come unclipped.
> […]
> Q.—All right.  And so after you saw that, you know, the bumper had been sagging, you said in the middle, do you – did you have any idea how long it had been like this?
> A.—No.
> Q.—Okay.  And so was it your understanding that that was the cause of the sound that you heard, the scraping sound?
> A.--Yes.

(Appx. Vol. II at 149-150).

Brackbill now asks this Court to find that his testimony, given approximately five months after the incident, and confirmed during his deposition, is either (1) false or (2) contradicted by Officer Hill's testimony – the testimony given five years after the incident, that he told Brackbill to stop his vehicle.  (See, Appellant's Br. at 36) ("Officer Hill gave him no choice and ordered him to stop exactly where he was.").   While Officer Hill did not testify at the summary hearing held in November 2015, Brackbill did – and testified under oath and the examination of his attorney, not an opponent party.   Now, Brackbill argues that his recollection of stopping his vehicle in the middle of the street – given five months after the incident occurred and given again five years later – "is also quite irrelevant." (Appellant's Br. at 37).  Interestingly, Brackbill, for the first time, argues that, if his recollection is correct (he has never suggested that his testimony under oath was incorrect), Pennsylvania law does not prohibit "brief stops for legitimate purposes."  *Id.* at 3-38, fn.3.   Equally as surprising, while arguing that his testimony is "irrelevant," Brackbill admits, again, that he testified that **he** stopped his vehicle only because it was necessary to check the bumper.  *Id.* (Emphasis added).   The District Court correctly determined that

41

Brackbill's testimony and the circumstances that caused him to stop his vehicle would allow a reasonable officer at the time of the incident to conclude that there was a "fair probability" that Brackbill violated 75 PA. CONS. STAT. § 3351(a) by stopping his vehicle in the middle of the roadway outside a business or residence district. The District Court's sound reasoning relied on to conclude that Brackbill's claim for false arrest fails as a matter of law and should not be disturbed.

### iii. Brackbill did not preserve his arguments for review, and the District Court did not make a plain error.

Brackbill correctly states that a litigant must present arguments first to a district court before asking for an appellate review. (Appellant's Br. at 38). He did not preserve his objections/arguments related to the Appellees' argument that, by stopping his vehicle in the middle of the roadway, Officers Hill and Ruff had probable cause to believe he (Brackbill) violated 75 Pa.C.S. § 3351(a). (Appx. Vol. II at 37). The District Court correctly stated that Brackbill failed to address this argument in his brief in opposition to Appellees' summary judgment motion, and he failed to raise any additional argument in response to Appellees' objections before the District Court. (Appx. Vol. I at 18, fn.5). Because Brackbill failed to preserve his objections or make any argument

to the District Court, he is precluded from raising the issue for the first time before this Court.

Next, Plaintiff relies on *United States v. Abreu*, 32 F.4th 271, 275 (3d Cir. 2022) to defend his failure to raise his argument before the District Court. *Abreu* does not excuse Brackbill's failure to preserve the argument. First, the Court noted that it clarified the degree of particularity required in *United States v. Joseph*, where we explained that "a party must make the same argument in the District Court that he makes on appeal" to preserve it. *Id.* (discussing *United States v. Joseph*, 730 F.3d 336, 339 n.3 (3d Cir. 2013). While Brackbill relied on a portion of the decision wherein the *Abreu* Court noted that parties may place greater emphasis and can **more fully explain** an argument on appeal than they did in the District Court, the *Abreu* Court cautioned that there is a limit to the extent to which an argument may be reframed. *Id* at 275. The *Abreu* Court also noted that the ultimate question is whether the **parties** "gave the District Court the opportunity to consider the argument. *Id.* (citations omitted). (Emphasis added). Here, Brackbill is not "placing greater emphasis" or "more fully explaining" an argument raised before the District Court, because he failed to raise the

argument related to 75 Pa.C.S. § 3351(a) at all. Likewise, Brackbill's argument that he allowed the District Court to consider **his** argument is incorrect. The District Court considered only the argument of the Appellees regarding 75 Pa.C.S. § 3351(a) because Brackbill failed to make any such argument.

Finally, Brackbill argues that the District Court made plain error, in finding probable cause existed to conclude Brackbill violated 75 Pa.C.S. § 3351(a). For the reasons outlined in the preceding section by the Appellees, it is clear the District Court's decision was not made in error.

### 2. The District Court correctly concluded that Officer Hill had no duty to intervene when sufficient probable cause existed to arrest Brackbill.

The District Court properly sustained Appellees' objection related to Brackbill's § 1983 claim for failure to intervene against Officer Hill. (Appx. Vol. I at 18-19). The District Court found that Officer Hill did not fail to intervene as Brackbill's arrest was supported by probable cause and supported a constitutional arrest for a violation of 75 PA. CONS. STAT. § 3351(a). *Id.* The District Court specifically referenced Judge Arbuckle's explanation that "[t]o state a valid Section 1983 claim for

failure to intervene, a plaintiff must show that an officer had a reasonable opportunity to intervene in the face of a constitutional violation and simply refused to do so." Id. (citations omitted).  Because the District Court correctly concluded that no constitutional violation would give rise to a Section 1983 false arrest claim, Brackbill did not demonstrate a reasonable opportunity to intervene, let alone a duty to intervene. *Id.*

Brackbill's argument is again based on the meritless claim that there was no probable cause to support his arrest. Because there was sufficient probable cause to arrest Brackbill and the District Court found no underlying constitutional violation occurred, Officer Hill had no constitutional duty to intervene in the arrest.

Out of respect for judicial economy, Appellees will not reiterate, in full, their argument outlined in previous sections related to the probable cause supporting Brackbill's arrest.  However, to the extent the District Court found there was sufficient probable cause to arrest Plaintiff for violating 75 Pa. Cons. Stat. § 3351(a), Appellees note again that this is Brackbill's testimony regarding where his vehicle was parked and why:

Q:    And when did the officers contact you?
A:    When did they come up to me?
Q:    Yes.

A:    Once I was out of my car, obviously I attracted the officer's attention **being in the middle of the road**.  That's when the first officer, who was Officer Gregory Hill, he came up to me.  And the second one was Stephen Ruff followed shortly after.

(Appx. Vol. II at 131).  (Emphasis added).  The District Court correctly granted Appellees' motion for summary judgment with respect to Brackbill's failure to intervene claim.

> 3.    **The District Court concluded correctly that Officer Ruff's testimony was sufficient to support Brackbill's arrest.**

Brackbill failed to plausibly plead a Fourteenth Amendment due process claim of fabrication of evidence, and the District Court correctly determined that Brackbill's claim should be dismissed.  Specifically, the District Court concluded that Judge Arbuckle unduly credited the arguments of Brackbill's counsel when considering the merits of the fabricated evidence claim.  (Appx. Vol. I-20).

A plaintiff can bring a Section 1983 claim for a due process violation based on the use of fabricated evidence.  *See Black v. Montgomery Cty.*, 835 F.3d 358 (3d Cir. 2016) *as amended* (Sept. 16, 2016).  To prevail on the claim, a plaintiff must show that 'there is a reasonable likelihood that, absent that fabricated evidence, the [plaintiff] would not have been criminally charged.'"  *Boseman v. Upper Providence Twp.*, 680 F. App'x

65, 69 (3d Cir. 2017) (quoting *Black*, 835 F.3d at 371).    Therefore, Brackbill was required to demonstrate a 'meaningful connection "between the injury and the use of the fabricated evidence."' *Id.* (quoting *Black*, 835 F.3d at 371).    Additionally, "the evidence [must] be 'so significant that it could have affected the outcome of the criminal case."' *Id.* quoting *Black*, 835 F.3d at 371).    The standard required to demonstrate that evidence is fabricated is a '**notable bar**'. *Id.* at 70 (quoting *Black,* 835 F.3d at 372) (emphasis added).    Testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong.    *Id.*    (citing *Black*, 835 F.3d at 372) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014)).    Finally, courts require "persuasive evidence supporting a conclusion that the proponents of the evidence are aware that evidence is incorrect or that the evidence is offered in bad faith." *Black*, at 372 (*quoting Halsey, 750* at 295).

Here, the District Court reviewed the evidence and correctly found that instead of pointing to any evidence that Officer Ruff knowingly provided false statements, Brackbill merely relied on his own self-serving conclusions and inferences, essentially asking the District Court to deny

Appellees' Motion for Summary Judgment based on his word alone. (Appx. Vol. I at 21). Specifically, the District Court observed that, in his brief opposing Appellees' Summary Judgment Motion, Brackbill's fabricated evidence argument was based only on an email between Officer Ruff's supervisors, which did not include Officer Ruff as a party to the email, in which one mentions that Officer Ruff asked what to do if the lab results from Brackbill's blood draw revealed that Brackbill was not intoxicated. Id. at 21-22. Brackbill argued, unpersuasively, that the email somehow showed Officer Ruff asking his supervisor how to cover up an improper arrest for DUI. *Id.* The District Court also concluded that, if the Court set aside the speculative nature of Plaintiff's claims, Brackbill did not establish evidence to show that Officer Ruff's statements during Brackbill's preliminary hearing were, in fact, false or made knowing that they were incorrect. *Id.*

Initially, Appellees note that Brackbill did not, and cannot, plausibly argue that fabricated evidence played any part in the officers suspecting him of DUI because he (Brackbill) never received criminal charges for a DUI. See *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69, 2017 WL 758480 (3rd Cir. 2017). Contrary to Brackbill's

48

assertions, Officer Ruff did not rely on "fabricated evidence" when he testified at the summary trial or at his deposition.  Instead, Brackbill again improperly frames the issues because even if an arrest is unlawful, which is not the case here, it does not necessarily provide a plaintiff with a valid fabrication of evidence claim.  Notably, a fabrication of evidence claim seeks redress for a constitutional violation that is separate and distinct from the redress sought by a false arrest claim.

Fundamentally, Plaintiff has put forth no evidence of "fabricated evidence" used against him, which led to the citations he received. During his deposition, Officer Ruff was asked, five years later, if he believed the "tickets" were properly issued – he answered "yes." (App'x Vol. II at 223).  When asked to explain his answer, Officer Ruff stated that the citations were good at the time because as a police officer, he saw two traffic violations, and it was his job to issue the citations. (App'x Vol. II at 224).  Officer Ruff explained that he heard a loud scraping sound coming from the roadway, "sounded like a snowplow," and it was Brackbill driving his car with the bumper dragging on the road.  *Id.* at 232.  Despite Brackbill's counsel asking Officer Ruff if he believed he did anything wrong, Officer Ruff answered, "no."  *Id.* at 233.  Officer Ruff's

decision to issue the citations after Brackbill's toxicology report was endorsed by Deputy Chief Deric Moody.  Deputy Chief Moody explained that if an officer is drafting a criminal complaint for a DUI, the officer cannot write a citation and a criminal complaint. (Supp. App'x at 264, p.15, lns. 6-9, 18-23).  He explained that, if a defendant pleads on one and not the other, it could create an issue with double jeopardy.  *Id.* at 16, lns. 22-23.  He explained that, in Brackbill's case, he would issue the citations separately. *Id.* Captain Dennis Sorenson provided similar testimony.  He explained that if an officer encounters an individual and the only charge they were facing was a summary offense, the officer would write a traffic citation and would not write a criminal complaint.  (Supp. App'x 255, p. 12, lns. 17-22).  Regarding Brackbill's allegations that Officers Ruff and Hill crafted a "story" to hide their "bad arrest," Captain Sorenson dispelled this theory when he testified that Officer Ruff asked him what to do if Brackbill's lab results came back as not intoxicated.  *Id.* at 257, p.17, lns. 2-6.  Captain Sorenson told him what to do.  *Id.*  In that situation, the officers review the incident in its totality, decide what citations to file, and proceed with that.  *Id.* at p.18, lns. 17-19.  The officers would not decide about the citations until the blood results returned.  *Id*

at lns. 20-22.  In summary, Captain Sorenson described the incident with Brackbill involved the bumper or bumper cover scraping the ground, catching the attention of the officers in the area and they went to investigate.  *Id.* at 259, p.25, lns.17-22.  The officers were not sure what happened to Brackbill's vehicle and did not know that night that his BAC was 0.0.  *Id.* at p.26, lns. 1-5. While the testimony of other officers are consistent with Officer Ruff's testimony, Brackbill offered no proof beyond his conclusions to show that evidence was crafted against him to hide a "bad arrest."

The lengths that Brackbill has gone to save his fabrication claim is best illustrated by his claim that Officer Ruff initially testified that Brackbill's bumper was "completely off the front of the vehicle," but later testified that the bumper cover was "fixed when he arrived." (Appellant's Br. at 46).  This is not an accurate summary of Officer Ruff's testimony. First, Officer Ruff testified that, while he is not a mechanic, but he knew enough to recognize that a piece of Brackbill's car was on the ground. (App'x Vol. II at 210).   While Brackbill represents that Officer Ruff testified that "the bumper cover was fixed when he arrived," Officer Ruff's testimony was:  "I mean his bumper still wasn't secured."  *Id.* at 227.

As noted previously, it is challenging to understand Brackbill's argument regarding whether or not a piece of his vehicle was scraping on the ground given his sworn testimony:

> Q:    And when you got out, and you were looking at your vehicle, what did you find?
> A:    I found my bumper was off.

(Appx. Vol. II at 130).

Here, as the District Court correctly observed, at best, Brackbill pointed out the inconsistencies in Officer Ruff's testimony between the preliminary hearing and his deposition, some five years later. Third Circuit case law is clear: "testimony that is . . . simply disputed should not be treated as fabricated . . . ." *Black*, 835 F.3d at 372 (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295, 2014 WL 1622769 (3d. Cir. 2014)). The District Court summed up Brackbill's fabrication argument by stating: "the Court finds that the dispute in this case regarding Brackbill's fabricated evidence claim is akin to the "he said, she said" disputes that the Third Circuit has unequivocally stated do not give rise to a claim for fabricated evidence. (App'x Vol. I at 22, citing *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 70 (3d Cir. 2017)).

4.   **The District Court correctly granted summary judgment on Brackbill's state law claims.**

Appellees correctly stated that Brackbill's state law are barred by the Pennsylvania Political Subdivision Tort Claims Act (hereinafter "the Act").

Section 8541 of the Act provides immunity from suit to local government employees when it states:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa.C.S. § 8541. The City of Harrisburg is a "local agency" under the Act. *See* 42 Pa.C.S. § 8501 (defining "local agency"). Officer Ruff is an employee of the local agency.

The District Court concluded that because no party objected to Judge Arbuckle's conclusion that Officer Ruff is entitled to immunity on Brackbill's state law claims based on the citation for lack of insurance, the remaining ground for Brackbill's state law claims is the citation for an equipment violation based on Brackbill's detached bumper or bumper cover. (App'x Vol. I at 23). The District Court correctly stated that the Act confers "broad tort immunity" to local agencies and their employees.

*Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006); 42 PA. CONS. STAT. § 8541. *Id.* The Act also provides enumerated exceptions to immunity under 42 Pa.C.S. 8542, which allow for liability to be imposed only for (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls, and street lighting, (5) utility service facilities, (6) streets, (7) and sidewalks. See Pa.C.S. 8542(b)(1)-(7). None of these exceptions apply. Willful misconduct is another exception to the immunity provided in 42 Pa.C.S. § 8550. This exception also does not apply here. Willful misconduct is an extremely high bar as:

> willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied'

*Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)). This requires evidence of "willful misconduct aforethought." *Pettit v. Namie*, 931 A.2d 790, 800 (Pa. Commw. 2007). As it relates to police officers, an officer must have understood that the tortious action is illegal and intended to commit it nonetheless. See *In re City of Phila. Litig.*, 158 F.3d 723, 728 (3d Cir. 1998).

Here, the evidence does not support that Officer Ruff possessed the requisite mental state as to expose himself to tort liability. Instead, Brackbill bases his willful misconduct argument on essentially the same foundation as his fabricated evidence argument: that Officer Ruff believed he made a bad arrest for DUI, and issued the traffic tickets as a cover up. (Appellant's Br. at 50). Again, Brackbill suggests that Officer Ruff "lied" about Brackbill's bumper dragging on the ground and that the bumper cover was "fixed" when he arrived. *Id.* As noted previously herein, this is not an accurate representation of Officer Ruff's testimony, and Brackbill's testimony dispels his theory:

> Q:    And when you got out, and you were looking at your vehicle, what did you find?
>
> A:    I found my bumper was off.

(Appx. Vol. II at 130). Regarding his alleged "lies," Officer Ruff testified that, while he is not a mechanic, he knew enough to recognize that a piece of Brackbill's car was on the ground. (App'x Vol. II at 210). While Brackbill represents that Officer Ruff testified that "the bumper cover was fixed when he arrived," Officer Ruff's testimony was: "I mean his bumper still wasn't secured." *Id.* at 227.

Because there is no evidence beyond the speculative conclusions Brackbill made to support the notion that Officer Ruff intentionally brought charges that he knew were improper, the District Court correctly concluded that, in light of the demanding standard required for the willful misconduct exception in the Act, as well as the lack of evidence supporting the claim that Officer Ruff intentionally engaged in willful misconduct, Officer Ruff is entitled to immunity under the Act.

## IX.    CONCLUSION

For these reasons, the District Court's grant of summary judgment to Appellees should be affirmed.

Respectfully submitted,

Lavery Law

By:  s/ Frank J. Lavery, Jr.
Frank J. Lavery, Jr., Esquire
Attorney No. 42370
Andrew W. Norfleet, Esquire
Attorney No. 83894
225 Market Street, Suite 304
P.O. Box 1245
DATE: January 18, 2023          Harrisburg, PA 17108-1245
(717) 233-6633 (telephone)
(717) 233-7003 (facsimile)
flavery@laverylaw.com
anorfleet@laverylaw.com
Attorneys for Appellees

## Combined Certifications

I certify that:

1.      I am a member in good standing of the Bar of this Court.

2.      The type face is Century, 14-point font and proportionally spaced.

3.      This brief complies with the type-volume limitation imposed by Fed. R. App. P. 29(d) and 32(a)(7)(B). The brief was prepared using Microsoft Word 2010 and contains 11,281 words of proportionally spaced text. The type face is Century, 14-point font.

4.      The text of the electronic version of this filing, which has been emailed to the Court, is identical to the text of the hard copies that have been sent to the Clerk's Office. The electronic copy has been scanned with the most recent version of Malwarebytes.

5.      On this date, a copy of this filing was served by this Court's electronic case filing system to all counsel of record:


Dated: January 19, 2023                    s/ Frank J. Lavery, Jr., Esquire

## Certificate of Service

I, Aimee Paukovits, an employee with the law firm of Lavery Law, do hereby certify that on this 19th day of January, 2023, I served a true and correct copy of the foregoing Appellees' Brief via the Court's ECF System.

*s/ Aimee Paukovits*
Aimee Paukovits